# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| A.B., a minor, by and through his parents and natural guardians, | : : : | No. 4:10-cv-484 |
| Plaintiff, | : : | Hon. John E. Jones III |
| v. | : : |  |
| MONTGOMERY AREA SCHOOL DISTRICT, | : : : | |
| Defendant. | : | |

## MEMORANDUM

### August 10, 2012

Presently pending before the Court in this Section 1983 civil rights action is the Motion for Summary Judgment (doc. 40) of Defendant Montgomery Area School District. The Motion has been fully briefed (docs. 42, 46, 49) and is therefore ripe for our review. For the reasons articulated herein, we will grant the Motion in its entirety and enter judgment in favor of the Defendant on the sole Count remaining in the Plaintiffs' Complaint (doc. 1).

## I.    PROCEDURAL HISTORY

Minor Plaintiff, A.B., by and through his parents and natural guardians, commenced the above-captioned civil action with the filing of a Complaint (doc. 1) on March 3, 2010. The Complaint asserts causes of action for deprivation of

certain constitutional rights (Count I) and negligence (Count II) as a result of the alleged failure of the Defendant, Montgomery County School District, to adequately address the Plaintiffs' complaints of bullying. On May 10, 2010, the Defendant filed a Motion to Dismiss (doc. 8), seeking dismissal of the constitutional claims. We denied that motion by Order (doc. 17) dated July 22, 2010.

The Defendant filed an Answer (doc. 18) to the Plaintiff's Complaint on August 3, 2010, denying all claims and stating affirmative defenses. The parties stipulated to the dismissal of Count II on October 4, 2011. (Doc. 35). Thereafter, on June 1, 2012, the Defendant filed the instant Motion for Summary Judgment (doc. 40) and a statement of facts (doc. 41), and a brief in support on June 15, 2012. Plaintiff filed an Answer to the Statement of Facts (doc. 45) and a brief in opposition (doc. 46) on July 20, 2012. The Defendant filed its reply brief (doc. 49) on August 3, 2012, and the Motion is thus ripe for our review.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by

pointing to an absence of evidence supporting an essential element as to which the

non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the

moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find

for the non-moving party, and a factual dispute is "material" only if it might affect

the outcome of the action under the governing law.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely

on allegations of denials in its own pleadings; rather, its response must . . . set out

specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The

non-moving party "cannot rely on unsupported allegations, but must go beyond

pleadings and provide some evidence that would show that there exists a genuine

issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent.*

*Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw therefrom. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment."  *Anderson*, 477 U.S. at 247-48.

## III.   STATEMENT OF MATERIAL FACTS

The following facts are derived from the record and viewed in the light most favorable to the Plaintiff in accordance with the standard of review applicable to a motion for summary judgment.

Plaintiff A.B. ("A.B." or "Plaintiff") is a minor residing in Lycoming County, Pennsylvania, with his parents, Eric W. and Marguerite W. ("A.B.'s parents"). (Doc. 42, ¶ 1). Defendant Montgomery Area School District ("MASD" or "Defendant") is the school district in which A.B. has been enrolled since 2004. (*Id.* ¶ 6). MASD operates the Elimsport Elementary School, the Montgomery Elementary School, the Montgomery Middle School, and the Montgomery High

School. (*Id.*). At all times relevant, Daphne Ross was the Superintendent of MASD, Karen Synder was the Principal of the Elimsport Elementary School, and Michael Prowant was the Principal of both the Montgomery Middle School and Montgomery High School. (*Id.* ¶¶ 3-5).

MASD has adopted two "anti-bullying" policies relevant to this matter: Policy Number 248, regarding unlawful harassment, and Policy Number 249, regarding bullying and cyber-bullying (*Id.* ¶ 7). The bullying policy identifies "bullying" as including but not limited to verbal or physical acts directed at another student which occur in a school setting and/or outside a school setting that are severe, persistent, or pervasive, and have the effect of substantially interfering with a student's education, creating a threatening environment, or substantially disrupting the orderly operation of a school. (*Id.* ¶¶ 8-9). The harassment policy prohibits verbal, written, or physical conduct relating to a student's race, color, national origin, ethnicity, gender, age, disability, sexual orientation, or religion where the same is so severe, persistent, or pervasive that it affects the student's ability to benefit from an educational program or activity, has the purpose or effect of substantially or unreasonably interfering with an academic performance, or otherwise adversely affects the student's learning opportunities. (*Id.* ¶¶ 10-11).

The policy requires an investigation to be conducted and corrective action to

5

be taken upon receipt of a complaint, (*id.* ¶ 12), although A.B.'s parents assert without citation to evidence that "investigations did not occur in each of the complaints filed in this matter." (Doc. 45, ¶¶ 12-13). When a teacher learns of allegations of bullying, it is the policy of MASD that said teacher conducts the investigation and determines the appropriate sanction. (Doc. 41, ¶ 16). However, Principals Snyder and Prowant testified that when they receive a complaint directly, or when a teacher believes more severe repercussions are warranted, they will investigate the complaint themselves. (Doc. 45, ¶ 16).

Plaintiffs allege that A.B. was bullied by a fellow student, T.B., while he was enrolled at Elimsport Elementary. (Doc. 1; Doc. 41, ¶ 24). A.B.'s parents complained to Principal Snyder about name calling and harassment on the playground near the end of A.B.'s second grade school year. (Doc. 41. ¶ 27; Doc. 45, ¶ 27). MASD investigated the incident, which it characterizes as "rough play" between students, and spoke to the boys involved. (Doc. 41, ¶ 27). The teacher who investigated the complaint noted that T.B. also called A.B. names. (Doc. 45, ¶ 29, Ex. A). During another incident, A.B. was also punched by T.B. in the hallway of the elementary school. (Doc. 41, ¶ 30). T.B. admitted during the investigation that he did strike A.B., and as a result, his citizenship award and permission to attend a school activity were revoked. (*Id.* ¶¶ 32, 34).

A.B. testified that when he complained to his teachers about T.B.'s conduct, he was told to stop "tattletaling" and nothing was done to remedy the situation. (Doc. 45, ¶ 26). A.B.'s parents relayed several other incidents to administrators, including the following: that T.B. destroyed and stomped on a mulch sculpture A.B. made during recess; that T.B. threatened to steal A.B.'s bicycle from him while riding the school bus; and that T.B. pushed and kicked A.B. after school at Kids Club, a Bible study program offered by a local church which is not affiliated with MASD. (*Id.* ¶ 35, 37, 42, 46). The Kids Club incident was investigated by the Pennsylvania State Police, who determined that the fight was mutual and filed no charges. (*Id.* ¶ 48). As a result of the Kids Club fight, Principal Snyder and Superintendent Ross sent the guidance counselor to make sure the incident did not spill over into school. (*Id.* ¶¶ 50-51).

A.B.'s parents complained to Superintendent Ross about these incidents via email, and those emails were forwarded to Principal Snyder. (*Id.* ¶¶ 56-57). In each instance, either Plaintiffs teachers, Principal Snyder, or Principal Prowant investigated the complaint and determined the appropriate punishment.  (Doc. 45, ¶ 58). T.B.'s parents were "always contacted" as a result of the incidents and investigations, and T.B. was disciplined, with consequences ranging from loss of recess privileges to intervention of the guidance counselor. (Doc. 41, ¶¶ 62-63).

 A.B. stated that the bullying ended in fifth grade, (*id.* ¶ 51), with the exception of one incident during the sixth grade year, when T.B. sent unsolicited text messages to A.B.; this incident was investigated by Principal Prowant and resulted in T.B. receiving one day of in-school suspension and being banned from bringing his cell phone to school for the remainder of the year. (*Id.* ¶ 54).

Plaintiff has submitted evidence establishing that several other parents have complained to MASD administrators regarding T.B.'s conduct. (Doc. 45, ¶¶ 5-6). One parent complained of their minor child being tormented and hurt by T.B., and that he was likewise told not to "tattle" when he complained to teachers. (*Id.* ¶ 5). Another identified T.B. as bullying and causing physical injury to her daughter. (*Id.* ¶ 6). On March 22, 2011, yet another parent complained to Principal Prowant and Superintendent Ross concerning physical abuse and verbal bullying of her daughter by T.B. (*Id.* ¶ 7). MASD offered to allow A.B. to transfer to a different elementary school. (Doc. 41, ¶ 64). T.B. transferred to a cyber or home school program at his parents' request and is no longer enrolled at MASD. (*Id.* ¶¶ 64-65).

## IV.   DISCUSSION

In the first and only remaining count of the Complaint (doc. 1), A.B., through his parents, asserts constitutional violations as follows: violation of the First Amendment right to freedom of association; violation of the Fourteenth

Amendment right to equal protection; and violation of both the procedural and substantive due process prongs of the Fourteenth Amendment. We address the claims in the order raised in the Complaint, beginning with the Plaintiffs' First Amendment claim.

### A.      Freedom of Association

Plaintiffs allege that MASD has entirely failed to put and end to the bullying perpetrated by a fellow student against A.B., an inaction which Plaintiffs contend is tantamount to MASD implicitly authorizing such behavior. Plaintiffs allege that MASD with deliberate indifference permitted the bullying to continue, thus interfering with A.B.'s personal relationships during these critical, formative years. (Doc. 46, pp. 4-5). MASD asserts that the Plaintiffs have presented no evidence of a relationship protected by the First Amendment, thus precluding their freedom of association claims. We agree with the Defendant.

The Supreme Court has recognized two forms of protected relationships: those involving expressive association and those involving intimate association. *See Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 442 (3d Cir. 2000) (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000); *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1988). The expressive association analysis queries whether the group engaged in expressive activities, whether state

9

action significantly affects ability to advocate viewpoint, and whether state's interest outweighs burden imposed. *Pi Lambda Phi*, 229 F.3d at 442. Intimate association, on the other hand, is generally characterized by "relative smallness [of the group], a high degree of selectivity in decisions to begin and maintain the affiliation and seclusion from others." *Rode*, 845 F.2d at 1204. In the case *sub judice*, Plaintiffs cite to *Smith v. Organization of Foster Families*, 431 U.S. 816 (1977) and *Roberts v. United States Jaycees*, 468 U.S. 609 (1984) to support their proposition that education is a protected intimate relationship under the First Amendment. (Doc. 46, pp. 3-4). We conclude that both cases are inapposite.

Plaintiffs cite only generally to *Smith* without directing the Court to which language they believe supports their assertion that classmate relationships are protected by the First Amendment. In *Smith*, the Court examined protected liberty interests in familial privacy and autonomy in the context of foster families, where no biological ties existed. *Smith*, 431 U.S. at 842-47. There, several foster families challenged certain statutory procedures for removal of foster children from foster homes under the Due Process and Equal Protection Clauses. *Id.* at 818. The Court concluded that the challenged procedures did not violate the constitution without reaching the delicate issue of whether and to what degree foster families possess a liberty interest in their familial relationships in comparison to biological families,

10

whose interests have long been established. *Id.* at 842-47. Our review of *Smith* reveals that Plaintiff's reliance thereon in connection with this matter is baseless; its language is limited to the long-recognized intimacy of *familial* relationships and does not indicate an extension of those protections to the much more attenuated relationships between classmates in a public school.

Plaintiff also relies on *Roberts v. United States Jaycees.* In *Roberts*, the Court concluded that application of the Minnesota Human Rights Act to compel the United States Jaycees to accept women as voting members did not infringe upon the group's freedom of intimate or expressive association. *Roberts*, 468 U.S. at 612. In generally discussing First Amendment protections, the Court noted that freedom of association claims must be examined by considering the particular relationship's characteristics on "a spectrum from the most intimate to the most attenuated of personal attachments." *Id.* at 620. The Court noted that certain relationships or interests, in particular marriage, childbirth, "the raising and education of children," and cohabitation with one's relatives are entitled to the protections offered by the First Amendment. *Id.* at 619.

Plaintiff points to this language from *Roberts* and submits that relationships with classmates in an educational setting are intimate and protected by the First Amendment. However, the *Roberts* Court's own language belies this interpretation,

noting in the preceding sentence that the "personal affiliations that exemplify [First Amendment] considerations . . . *are those that attend the creation and sustenance of a family* – marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Roberts*, 468 U.S. at 619 (emphasis added); *see also Smith*, 431 U.S. at 844 (discussing "the importance of the *familial* relationship" (emphasis added)). The Court, by "the raising and education of children," thus quite clearly the Court meant rearing of children within the family unit and familial decisions regarding their children's educational path. Neither *Roberts* nor *Smith* indicates that the Court extended constitutional protection to relationships among classmates. Both cases dealt with state interference with the sanctity of familial relationships and are irrelevant to the issue before the Court.

Moreover, as the Defendant correctly observes, this Court and numerous others have long held that general social relationships among classmates are insufficiently intimate or expressive to trigger the First Amendment's protections. *See, e.g.*, *Gruenke v. Seip*, 225 F. 3d 290, 307-08 (3d Cir. 2000) ("[P]urely social rights to association lack . . . constitutional protection."); *see also Kirby v. Loyalsock Twp. Sch. Dist.*, 837 F. Supp. 2d 467, 474-75 (M.D. Pa. Sept. 6, 2011) (relationships with classmates and basketball teammates legally insufficient to trigger First Amendment); *Dominic J. v. Wyo. Valley W. High Sch.*, 362 F. Supp.

12

560, 569 (M.D. Pa. Mar. 22, 2005) (relationship between a "[student] and his peers at school" is not constitutionally protected). Accordingly, having been presented with neither evidence nor argument that the Defendant has prohibited A.B. from engaging in expressive or intimate associations as defined by the Supreme Court, we will grant the Defendant's Motion (doc. 40) to the extent it seeks judgment in the Defendant's favor on Plaintiffs' First Amendment claims.

**B.    Equal Protection**

Plaintiffs argue that the Defendant has intentionally treated A.B. differently from other similarly situated individuals and that there was no rational basis for doing so. The Defendant contends that there is no evidence establishing that A.B. was singled out and treated differently than other students who complained of bullying. The Plaintiffs concede this point in their opposition papers, noting that there is no evidence regarding complaints from other bullied students and thus nothing from which the Court could conclude that A.B. had been treated differently in comparison. (Doc. 45, pp. 5-6). Accordingly, we will grant the Defendant's Motion (doc. 40) as it relates to Plaintiffs' Equal Protection claim.

**C.    Due Process**

The Third Circuit has succinctly articulated the standard for review of Fourteenth Amendment due process claims:

13

> The Fourteenth Amendment prohibits state action which "deprive[s] any person of life, liberty, or property, without due process of law." To enable individuals to enforce these rights, Congress enacted § 1983 as a federal cause of action against deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States. To state a § 1983 claim, Plaintiffs must demonstrate that Defendants, acting under color of state law, deprived Plaintiffs of a right secured by the Constitution or the laws of the United States . . . .

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 385 Fed. Appx. 135, 2010 U.S. App. LEXIS 13485, 2010 WL 2600683, *4 (3d Cir. June 30, 2010).

A.B., through his parents, brings a § 1983 action to enforce both the substantive and the procedural prongs of the Fourteenth Amendment's due process guarantees. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000). We examine each of these claims in turn.

### 1.    Procedural Due Process

When a plaintiff raises a claim under Section 1983 for violation of the right to procedural due process, "we employ the 'familiar two-stage analysis,'" querying first whether the plaintiff has asserted individual interests encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and second, "whether the procedures available provided the plaintiff with 'due process of law.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). MASD contends that the Plaintiffs are unable to satisfy either of these elements. We agree.

14

Plaintiffs posit that it is the Defendant's "failure to execute [its] policy in a proper manner that impose[s] liability," (doc. 46, p. 10). Plaintiffs cite broadly to *Shertzer v. Penn Manor School District*, 422 F.3d 141 (3d Cir. 2005), a decision in which the Third Circuit recognized that the Commonwealth of Pennsylvania has created by statute a "legitimate claim of entitlement to a public education," *id.* at 149, and assert that the Defendant has deprived A.B. of this right by failing to comply with its own anti-bullying and anti-harassment policies.

This Court, in *Dallam v. Cumberland Valley School District*, 391 F. Supp. 358, 361 (M.D. Pa. Mar. 20, 1975), explained that the "property interest in education created by the state is participation in the entire process." *Id.* at 361. Thus, the individual entitlement to public education is, in essence, a bundle of inseparable rights. *Id.* The first prong of the procedural due process analysis can accordingly be satisfied where a plaintiff establishes that he has been deprived of his right to participate in the entire education process. Plaintiffs, however, do not argue that Plaintiff has been prohibited from participating in even one aspect of public education. Instead, they contend broadly that the Defendant's failure to properly address the bullying incidents violated A.B.'s constitutionally-secured rights.

The record establishes that A.B. was picked on by another student, that A.B.

and his parents reported these incidents to teachers and administrators at MASD,

that the teachers and administrators investigated the complaints and, where they

believed it to be warranted, disciplined the offending student, with punishment

ranging in severity warranted by the offense. The record simply does not support

that MASD deprived A.B. of a constitutional right. Nothing of record establishes

that A.B. was, for example, prohibited from participating in clubs, extracurricular

activities, or sporting events, or that he was deprived of benefits and opportunities

associated with public education. There is likewise no evidence that his education

was interfered with or that he suffered academically. Thus, the Plaintiffs have

presented no evidence establishing that MASD deprived A.B. of his protected right

to education as contemplated in *Shertzer*, thus failing in an essential element of

their procedural due process claim. Accordingly, we will enter judgment in the

Defendant's favor on this claim.

### 2.      Substantive Due Process

Lastly, the Plaintiffs advance a state-created danger theory in support of

their substantive due process claim. To prevail on such a claim, a plaintiff must

establish the following elements: "(1) the harm ultimately caused was foreseeable

and fairly direct; (2) a state actor acted with a degree of culpability that shocks the

conscience; (3) a relationship between the state and the plaintiff existed such that

the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that create a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Sanford v. Stiles*, 456 F.3d 298, 304-05 (2006).

The court articulated that "in *any* state-created danger case, the state actor's behavior must *always* shock the conscience" and, importantly, "[m]ere negligence is not enough to shock the conscience." *Id.* at 310. The Circuit in *Sanford* identified that there are three standards applied in state-created danger cases, depending upon their different circumstances: deliberate indifference, gross negligence or arbitrariness, and intent to cause harm. *Id.* at 306. The Plaintiffs proceed here under a deliberate indifference theory. The Defendant contends first that Plaintiffs have not alleged harm of a constitutional nature and second that the record belies any contention that the Defendant acted with such deliberate indifference as to shock the conscience. Our decision here turns on the second argument interposed by the Defendant.

Plaintiffs contend that the "evidence demonstrates a deliberate indifference on the part of the defendant in failing to take action with regards [sic] to the

17

bullying of the minor plaintiff." (Doc. 46, p. 11). The Plaintiffs submit that MASD was deliberately indifferent to Plaintiff's circumstances and failed to impose proper punishment on T.B., thus allowing the bullying to continue and placing A.B. in a position of vulnerability that he would not have been in but for MASD's actions. (*Id.*).

The record again belies Plaintiffs' assertions. Uncontradicted evidence establishes that MASD responded to each complaint by investigating the incident, with teachers, principals, and the superintendent investigating allegations, and that discipline was handed down for each incident complained of. When T.B. sent unsolicited text message to A.B., he received in-school suspension and was prohibited from bringing a cell phone to school. (Doc. 41, ¶ 51). For the pushing and name-calling incidents, T.B.'s parents were "always contacted," and T.B. was disciplined by teachers and administrators, with consequences ranging from loss of recess privileges to intervention of the guidance counselor. (*Id.* ¶¶ 62-63). The record also establishes that teachers and administrators engaged in ongoing email conversations with A.B.'s parents, advising them of actions being taken to address the complaints. Plaintiffs admit that with the exception of the text messaging incident, the bullying ceased in fifth grade. (*Id.* ¶ 51).

Thus, the Plaintiffs present no evidence to support their claims that the

Defendant engaged in conscious-shocking behavior which placed A.B. in harm's way. To be sure: the record indicates the exact opposite. The Defendant was actively engaged in and responding to the Plaintiffs' complaints and disciplined T.B. where administrators deemed doing so appropriate. Accordingly, we will grant the Defendant's Motion for Summary Judgment (doc. 40) with respect to the Plaintiffs' substantive due process claim as well.

## V.    CONCLUSION

As the Third Circuit has previously admonished, at the summary judgment stage, "[t]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral arguments." *Berckeley Inv. Group, Ltd. v. Cokitt*, 455 F.3d 195, 201 (3d Cir. 2006). Thus, at this phase, the Plaintiffs' burden requires more than bare assertions and conclusory allegations; they must demonstrate to the Court that a factual basis exists from which a reasonable jury could find in their favor. The Plaintiffs here have failed utterly in this endeavor.

We are not unsympathetic to the plight faced by A.B. and other students when faced with bullies, particularly during their formative years. But converting such behavior within a public school to a claim of constitutional import is a formidable endeavor, and one that cannot be achieved without facts that are wholly

19

absent from the record before us.  Plaintiffs have failed to put before the Court *any* record evidence establishing that A.B. was in any manner deprived of a constitutional right at the hands of the Defendant, and thus the Court will grant the Defendant's Motion for Summary Judgment (doc. 40) in its entirety and enter judgment in the Defendant's favor on the remaining count of the Plaintiffs' Complaint (doc. 1). An appropriate order shall issue.